Martin, J.
We are to inquire as to the sufficiency of the notice to sue in the circumstances stated in the answer. *35 It is claimed that the notice was given to secure the benefits of section 5833 Rev. Stats., which reads: —
“ Any person bound as surety in a written instrument, for the payment of money, or other valuable thing, may, if a right of action accrue thereon, require his creditor, by notice in writing, to commence an action on such instrument forthwith, against the principal debtor; and unless such creditor commence such action within a reasonable time thereafter, etc. . . . The creditor or assignee of such instrument so failing to comply with the requisition of such surety, shall thereby forfeit the right which he Would otherwise have to demand and receive of such surety the amount due thereon.”
Section 5834 provides that the executors or administrators of a surety may serve such notice with like effect.
The notice authorized by this section is simple in its elements. Is. it to be, (1) in writing; (2) a requirement to sue the principal forthwith, and inferentially; (3) a sufficient description or indication of the instrument.
It seems to be admitted that the written notice given by the executors is defective, for want of the last requisite. And it is claimed it is defective also because it is a request, and not mandatory in its terms. The statute does not require the use of any particular words; but the notice to be effectual must embrace the enumerated particulars.
Doubtless the use of the word request instead of the word require, or any of its synonyms, would not vitiate a notice, if the context showed it to be peremptory and adversary.
The defence set up in the answer is not based on the written notice. It consists of a series of facts, one of which is service of the defective notice. The complete statement discloses a waiver of written notice, and an express acceptance of verbal notice. It recites in substance that Osborn, in fact, held two notes against McKee, in which the decedent was bound as surety, and to which the notice would apply indifferently. That he thereupon *36 went to the executors, and, exhibiting .the notes, said that he accepted the notice as applicable to both. The executors then explained to him the danger of delay, and urged him to sue at once. And he then promised that he would, without further notice, commence an action forthwith against McKee on both notes, and collect the same with due diligence.
In our opinion, the arrangement thus made was a valid parol substitute for a formal notice.
If the creditor had remained silent, or refrained from stipulations as to his duty, the written notice would have to be tested by its words alone. But a valid notice may be withdrawn, or a defective notice confirmed by consent of the proper party. And the question is, as to the meaning and effect of the arrangement set forth in the plea. We think that both parties understood at the time that the written request was a direction made in the assertion of a right, and not merely a friendly request. Its formal character indicates that such was the intention of the executors. And we are satisfied, as already stated, that the adjustment was, in intent and effect, a substitute for the formal notice prescribed by the statute. It was a waiver of an explicit and mandatory notice covering both notes, and which might otherwise have been given, and was calculated, naturally, to lull the executors into a feeling of security, and cause them to omit giving a corrected notice.
It is denied, however, that formal notice may be waived. The statute, in a sense, is a part of the contract. The suretyship is accepted with knowledge of its terms. It gives rights to both parties. The right of the creditor is to disregard with impunity any notice not in strict conformity to its terms. This is his privilege, and concerns him alone, and- is unaffected by considerations of public policy. Like other personal privileges, it may be waived. The enforcement of similar waivers is an every-day occurrence in our courts.
*37 Even in criminal cases, an accused may waive a merely personal privilege. He may waive his right to a speedy trial, but he may not waive his right to a jury trial because of the most obvious considerations of public policy.
Again, it is objected that the answer is fatally defective, because it does not aver a failure to commence an action in due time.
It does aver a failure to prosecute it with due diligence.
As we have seen, the statute provides that the creditor shall forfeit his right against the surety, unless he commence the action within a reasonable time, and prosecute it to judgment against the principal with due diligence.
The duty of the creditor is to commence and prosecute the action. It is not sufficient to commence in due time. The language of the statute is distributive, and no service having been made on McKee, it would have been accurate to have laid the default either entirely or additionally in a failure to commence the action in due time.
Be this as it may, we think the default is sufficiently well pleaded to resist a general demurrer.

Judgment reversed.